Appellant. Ms. Rowland for the Appellant. Ms. Bates for the Appellate. Good morning. Good morning. May it please the Court, I'm Sandra Rowland on behalf of Mr. Burroughs. The seizure of Mr. Burroughs was presumptively illegal and the government did not overcome that presumption at the hearing. Probable cause existed for the arrest that Officer 750 made with the help of Officer Haskell in the helicopter, but there was no information about the arrest of the second adult. If Mr. Burroughs was arrested by Officer 750, then there was probable cause for his arrest. But if he was not arrested by 750, then there was not probable cause for his arrest. At the time of the events, Officer 750 said that the arrest took place in front of 3425 6th Street. I understand where you're starting with Officer 750. Tell me about Mr. Haskell and Mr. Wade and what they had to say. Officer Haskell, Officer Wade. Mr. Haskell's testimony directly contradicted Officer 750's testimony. He testified that the arrest that he and Officer 750 made... Was that the District Court's conclusion that it directly contradicted? I thought the District Court found that they could be compatible. The District Court found that it could not square the discrepancies, but offered two theories... So what are we supposed to do in a case like that? What's our standard of review for something like this? You're reviewing for clear error. The court used a standard that is significantly less than it should be, which is that he found that Officer 750 must have been mistaken. Someone had to be mistaken, either Haskell or 750, and it must have been 750. He gave two theories as to why and said... As I recall, didn't Officer Haskell say something substantially similar to this, if not this? I was watching him the whole time. I watched the suspects when they got out of the Charger. I watched the suspect when he walked into the parking lot. I watched the suspect walk nonchalantly into the parking lot. I said, get him. They got him. I saw them arrest him, and then Officer Wade came along and said, that's Burroughs. Now, that's pretty strong, isn't it? Have I misstated it somehow? Yes. No, you're not misstating something, you're missing something. And the piece you're missing is that there's a dispute. All of that is true and undisputed, except that there's a dispute about where that arrest took place. Officer Haskell says, yes, I was working with Officer 750, and it happened in the parking lot at 3600. And the contemporaneous report from 750 is, yes, we worked together to make this arrest, and it was in the parking lot at 3425. I think what the district court said was, look, the transcript is a bit confusing. It's hard to tell if two or three things are going on at the same time, people talking over each other. But then he said, but what is clear to me and what's powerful in convincing testimony was in the testimony of Officer Haskell about watching this guy from beginning to end. How is that clear error? That is clear error because in the section where Officer Haskell and Officer 750 are facilitating that arrest, people are not talking over each other. There are no gaps whatsoever. That is a very clear statement. It's a clear segment. How do we know nobody's talking over each other? How do you know that? Because if you talk over someone, it silences someone else. So how do we know somebody wasn't silenced? There weren't three arrests going on at the same time. Well, there are no words whatsoever between Officer Haskell saying, stop that guy, and Officer 750 saying, I've got that guy. Do we know, I'm just curious about what Judge Malecza said. I know on my cell phone, if I interrupt someone, then only one of us voices is heard, and the other one is blocked out. Is this radio open so that people can actually speak over one another, or does it block out when two people speak at the same time from different points? Do you know the radio run? I don't know. Maybe we can ask the government, but probably not. Well, Officer Haskell did testify that, he testified that he put out four, broadcast four descriptions, but there's only three on the radio run. And he did testify that maybe someone stepped on his description, his fourth description. I think meaning that if... It got blocked out, maybe. Yes. So your theory is that to the extent that there's clarity, and when you're agreeing with Judge Griffith's description of what the testimony showed, you're saying, yes, that's all right, but that's with respect to Hartsfield, and not with respect to Burroughs. And what about, I mean, that's not exactly what I think the district judge held. He held that Haskell and Falcon was watching the person who ends up being arrested and walking nonchalantly in the parking lot. Do we have to, in order to find for your client, hold that Haskell was, that the district judge was clearly erroneous to the extent that he found that Haskell was watching Burroughs the whole time? No, you don't. The problem in the case is that there was no rational basis to find who was confused and who was correct, because the government failed to call Officer 750 or the other arresting officers. Could you have called Officer 750? Could you have issued a subpoena for Officer 750? Yes, but we have no need to prove anything when there is a presumptively illegal arrest. It is up to the government to prove that there was probable cause. Right, and they came forward with Burroughs, and then your argument is, hey, there was confusion about Officer 70, so if you wanted to stir things up to sort of get away from that powerful Haskell testimony and say there's real confusion here, maybe the baton passed to you at that point to try to undo the showing that they had made. Well, we didn't need to stir things up because the district court found that it could not reconcile. No, see, that's what you did in the brief. You said, look, the transcript of these conversations, it's unclear what was going on, whether there was confusion, whether people were talking over, but what is crystal clear to me and persuasive and compelling is Haskell's testimony. And so he didn't say at the end of the day, I can't resolve this. I can't square this circle. I'm making my best guess. He said, as to that aspect of the evidence, it's confusing, but what's not confusing, what's clear, and what is persuasive is Mr. Haskell. And so with that testimony, then maybe the burden would have shifted to you all if you wanted to unravel the power of that testimony. There was absolutely no confusion or talking over each other when Officer 750 said, I've got him, I'm at 3425, and Haskell is, and the Falcon is above me. There was no confusion about that. And the court didn't find anything confusing about that. And the court, and that was what the court referred to when it kept saying, you know, this circle can't be squared, or, you know, there are clear discrepancies. And, and then the court found that the confusion was on the part of 750, either because 750 was wrong about the address, for which there's no rational basis, and really is not even sensible, or there were two arrests happening at the same time, and Falcon was above each of them in different places, which also is not rational, and doesn't make any sense. There's absolutely no reason. I thought the second hypothesis for reading of the evidence was that Officer 750 arrested Hartsfield independently and coincidentally without Falcon's help, and that perhaps Falcon unknowingly was over Burroughs and aiding, was it Officer Williams? Yes, that is a second theory, except that Officer 750 is arresting at 3425 with Falcon shining the light above him. How do we know that? Because he says that. What says a helicopter is above me? He says Falcon is above me. It doesn't say the light is on this guy. Well, if you look at the transcripts at, I'll get you the citation in a minute, it's clear that Falcon is using his spotlight as a column of light. So he says, when they're trying to capture the juvenile, he says to them, come to my light, see where my light is, come to my light. These are not running lights that are just spread over the whole area, this is a spotlight on one person. He spotlights someone that Officer 750 arrests, he spotlights the juvenile and keeps saying... And yet Haskell, when given an opportunity to explain this, goes to the map and draws an X on the parking lot. That's where he, that's the arrest that he was talking about and that's Burroughs. And Officer 750, when he was making a most critical announcement, the announcement being I've arrested somebody, other officers need to come assist, my location is 3425. We don't hear later... So you just have to disbelieve Haskell, right? Your version of events, you just can't believe Haskell. No, my, our argument and our version of events is the government failed to explain this discrepancy and it was their burden to do so. The radio run is crystal clear about this arrest. You're saying about the Hartsfield arrest. In other words, your view is Falcon was helping with Hartsfield, that was at 3425, the light was on him... And that's what Haskell thinks. There was communication that closed the link, get him, I got him, and that he, I mean, that's why I was asking whether you have to find that the district court is clearly erroneous with respect to saying that Haskell was also, while he was facilitating this arrest with his spotlight over Hartsfield, also watching Burroughs the whole time. I mean, that's, I sort of thought that was your theory, but you're saying no. In other words, the district court, in the face of testimony that, as you described it, seems to clearly indicate Falcon facilitating arrest of Juvenile and arrest of Hartsfield and being quite focused on Hartsfield and getting, you know, vocal communication back from Hartsfield, using light over Hartsfield, and that meanwhile Burroughs is running off south toward the parking lot and somehow the district court finds in the face of Falcon being busy over here that Falcon was watching and tracing Burroughs. I thought that was your theory and that therefore, to the extent that the district court sort of puts this all in the hopper and comes out and says, well, Burroughs bailed from this car, we know the car was stolen, I watched, Hartsfield, I mean, I'm sorry, Haskell watched Burroughs the whole time, Burroughs was arrested and was wearing the clothes. No, I think... There's not evidence to support that. I thought that was your theory, but no. No, not exactly. I think what the court was saying was it might be that two arrests were happening at the same time. Officer 750 was at 3425 making an arrest, presumably Cody Hartsfield, and Haskell was with some other officer in the lower parking lot arresting Mr. Burroughs. And the court says this might or might not be true. So maybe those happened in the exact same second, but that doesn't work because Haskell is supposed to be shining his light. He's supposed to be directly facilitating by shining his light on the suspect. And we think the 750 says so. Could he shine his light on Burroughs and still be, given the nature of helicopters, somewhat over the Hartsfield arrest? They weren't that far apart and a helicopter over you can mean... When you look at the distances between the upper parking lot and the lower parking lot, and when you look at his testimony about his light, that he shines his light directly on Burroughs and his helicopter is over all of them. They're all in this complex area, different streets, but it seems to me perfectly reconcilable. I think it would be pretty absurd for a police officer who's trying to alert other officers that he's got a suspect and where he is to just comment that Falcon is here. Falcon above me makes no sense really for a police officer to say unless he means I am under the light that Falcon just talked about. I am the person making this arrest and this is where we are. And are you also relying on... One thing that seems additionally in the mix is that Haskell in the helicopter says, you know, get him. And in response, 750 says, I got him. And arguing Haskell is in fact at that time over Burroughs and Haskell is saying, you know, get him. You hear nothing from anyone on the ground saying, I got him. So it's curious that although that seems to be the practice, that's what they do with the juvenile, get him, I got him. Then there's a get him and an I got him. Neither does Haskell seem to say get him to the officer arresting Burroughs, nor does the officer arresting Burroughs respond, whereas both of those things seem to be happening. And in Officer Haskell's testimony, he said that he was working with Officer 750. You know, he says that, that, you know, I said these words and in response to my words, Officer 750 said these words back. So he, he does not disown working with Officer 750. He claims it. We'll give you time back, but let's hear from the government now. Thank you. May it please the court, Lauren Bates on behalf of Appellate United States. Officer Haskell testified that he saw the four individuals bail out of the white Dodge Charger and that he never lost sight of the individual who ended up in that lower parking lot. What do you do with their collateral estoppel argument? Here collateral estoppel would not apply here because the ruling that appellant is citing was a ruling in a preliminary hearing. So it is not... Did it result in dismissal? What happened after the Superior Court said no probable cause? What happened? So, and I, at that instance, the case against appellant Burroughs in the DC Superior Court would have, I mean, there was no probable cause found, so there would be no case, but the government... Was, so what was, what happened when there's no probable, when a finding of no probable cause is entered, what happens to the case? It's... At that point, it's gone. At that point, the case is... That's not preliminary. No, but... Okay, so it's not preliminary. It's conclusive as to that moment in time. Well, it is not a final judgment. The government is still free at that time and often does in many cases to seek an indictment and have a grand jury return an indictment on a basis of probable cause. Did you do that here? In this case, the government did not, but I do not think that the fact that the government chose not to pursue the case in Superior Court affects the collateral estoppel analysis. There may be a good explanation given that there was a separate case then proceeding. Well, but what about, I mean, the one judge says no probable cause. I assume you would agree you can't march him down the hall to the next judge and say, we'd like to have a probable cause hearing. No, it's... So it's collateral estoppel in that sense, right? Well, that would be... Why can't you? And at that moment, there would be other concerns. What? I think the government could... I'm not sure that the rules permit for a... I'm just trying to understand your theory here as to if it's not final, preliminary, doesn't count for anything, why can't you march him down the hall to another judge? There's a possibility, I think, that under changed circumstances... No, changed circumstances. ...that if the government did seek, for example, an indictment from the grand jury, there would be... the court would accept that hearing. This isn't a grand jury case, so let's just put that aside, all right? So, if you're not doing that, so you don't have the intervention of a grand jury decision maker, what's to stop you from just having gone down the hall and gotten a different judge? I mean, absolutely no question of whether it was a magistrate judge ruling on that. I don't know that the government could, but that would be in that same case. Because? There may be different procedural rules and law of the case issues that would preclude the government from... No. It's preliminary. Law of the case doesn't apply. Judges can... if it's preliminary, a judge can revisit. Well, the government, I think, could ask for reconsideration. I think that... No, no, I'm talking about going down to another judge. I don't know that there's a mechanism for... by which... Of course there is. ...the court government could seek to transfer a case to a different judge and essentially engage in... What about... what was different, if anything, between the presentation to the judge in Spear Court and the presentation to the judge here? I thought you had additional evidence... Well, so... ...when you came before the judge in the federal court. There were entirely different witnesses. The witness who testified at the preliminary hearing in Superior Court, I think, acknowledged during the testimony that that witness did not have significant information about the circumstances of Burroughs... No, that's the problem. You chose a really lousy witness who didn't have any relevant knowledge of anything. And then someone says no. And then you didn't have new facts. You just grabbed some better witnesses for the next hearing. Isn't that what happened? It wasn't that you went out and investigated and got new information, which can happen with the government. But, in fact, you had the exact same story on day one in Superior Court and, say, day two... I know there's not a lot of time, but day two in District Court. And you just thought, okay, let's try some different witnesses. Is that okay? So this was not a situation where this was the same hearing being re-litigated in front of a different judge? The same legal issue was being re-litigated, and you just thought to bring the exact same legal issue, probable cause, correct? It involved the same... I mean, it's a different legal issue. This was probable cause for the purposes of a suppression hearing. But, yes, it tied together. But you're not going to have probable cause for a suppression hearing unless it's probable cause for the rest. You were deciding probable cause for the rest in both cases, correct? Correct. Probable cause for the rest. Exact same issue. You brought a lousy witness the first time, and then you said, well, that didn't go so well. Let's grab another... Let's grab a better set of witnesses. And I think... Right? That's the only... It wasn't that you went out and discovered new information and did new investigation. You just grabbed new, better witnesses. No, I think that the government attempted to be prepared for the suppression hearing that was being held. You didn't choose to be prepared for the probable cause hearing in Superior Court? I don't have the information to speak to. I think, obviously, the government would always try to be prepared for whatever hearing they were facing. I don't... I'm surprised by your initial answer to Judge Millett's line of questions. I would have thought that you would have responded with a waiver argument. Was this raised below? No, it was not. No. And that is an argument that we have made in our briefs that... Well, it's still subject to plain error. Why didn't you make the argument? Isn't that your strongest argument? I think... Yes. Because it really... It is very difficult, as Judge Millett's line of questions has amply demonstrated. It's a very difficult question whether there's a preclusive effect for no finding of probable cause. That's a difficult issue. Is waiver a difficult issue here? Not on this record, no. What about the fact that it was mentioned in the trial court that I think that the counsel for the defendant said there was a finding of no probable cause in the Superior Court and we're challenging probable cause here? I'm not sure that it has to be, you know, chapter and verse briefed in order to be preserved. I mean, there was no request made of the District Court judge to make a legal ruling that the government was precluded from litigating the merits of the suppression hearing in District Court because of the proceedings that occurred in Superior Court. But it was mentioned that the Superior Court had made a contrary... And the defense clearly said, and the same result applies here, no? I think they argued that the District Court judge should, after hearing the evidence, reach the same conclusion. Okay. I don't read the record as an argument to the District Court judge that, based on that fact alone, based on the fact that there was a proceeding in Superior Court, that the District Court judge did not need to entertain or should not entertain the merits of the suppression hearing and should rule on the basis. The words collateral estoppel were never, you know, uttered and no request was made of the judge to... Do you know why Damian Williams and Officer Olivet or Oliveira were not called in the Federal District Court suppression hearing? I don't know why they were not. I think I can tell you that the government believed, and as it would in any case, that the evidence that they had presented at the suppression hearing was sufficient to meet the government's burden, which is to establish probable cause for the arrest. And, in fact, the District Court judge, upon hearing that evidence and clearly and carefully evaluating it, came to the same conclusion. Really expressing some frustration. I mean, I have to say, when we're asked as judges to, you know, hold that there is probable cause and we're not given what looks like the best evidence, it's, you know, you're asking us to do something with maybe without adequate assistance. It's a little... I mean, we don't have the ability to call witnesses and, you know, and the District Court judge expressed a lot of discomfort with the adequacy of the evidence in this case. He said, it doesn't all add up. There's no way to make it all add up. And I just can't help but think that if the government had brought witnesses with personal knowledge of the events, that that would not have been the case. I mean, it may have assisted the District Court. I do, I think, take issue with the characterization of what the District Court expresses as expressing a lot of frustration. I think Judge Boasberg fairly recognized that there was some inconsistencies or discrepancies that he did not view as being, you know, could be explained. But I think what he concluded ultimately was that it was clear to him... All of which the government could have easily eliminated by calling the guy who arrested, the officer who arrested Burroughs. I mean, it's possible that additional evidence could have explained... Possible, that would have been exactly. He said, yeah, we were right under the spotlight. Sure, well, the helicopter was, you know, the helicopters aren't static. They're moving around. So it could be over him and shooting the spotlight here. That's how it works. That angle. It's a very easy explanation. It's possible, but I think the fact that that explanation wasn't present, the District Court was aware of these inconsistencies. And what this court has to review on appeal is whether knowing that that discrepancy existed, the District Court judge clearly erred in finding and in crediting Officer Haskell's uncontradicted testimony. So that is, would it be a clear or plain error if the government, and this is hypothetical now, goes into Superior Court, doesn't want to bother Haskell or Officer 750. It's their day off. We'll have to pay them overtime if they come in. Let's just grab this officer into Superior Court. This officer gets in there and is a disaster as a witness because he doesn't have any real knowledge of anything. Superior Court says no probable cause. Prosecutor goes, shoot, that didn't go well. Let's call Haskell. Let's get him in here, even though it's his day off, and let's cross the street and go over to District Court and see if there was probable cause for this arrest. And so maybe it was just enough of a record, but you sure didn't improve it a whole lot and left a lot of holes and questions in there. Is that allowed? You know, you're farm shopping and you're doing that minimum didn't work. Let's try a little bit more. If the District Court here had said, I can't figure this out without having the officer who arrested Burroughs here, then you go down to another District Court judge or back to Superior Court and get that one. What do I do with this image, my concern that this case is creating for me? Well, I think first that concern, given the record that we have here, again, with no collateral estoppel or any type of bad faith arguments having been made below or preserved for this court. No, no, collateral estoppel, they didn't use the magic words, but they talked about inconsistent probable cause rulings. And even if they hadn't raised it, we have plain error reviews. So I don't think that is a complete escape hatch for you. Even looking through plain error, would it be plain error to do that marching? And I know there were days elapsed and it wasn't exactly that scenario, but I assume you would agree that that sort of let's try this, that didn't work, let's try this across the street, that didn't work, let's go back across the street and grab another witness, that didn't work, would be entirely inappropriate behavior for the government. I don't agree that that is how the facts unfolded here. There were completely different charges that were appropriately brought in two separate forums, charges that could not be initiated in the alternate forum before two different courts. But I'm not aware, standing here today, and this again was not briefed or teed up as an issue. Collateral estoppel was briefed. Well, I'm not aware of any case that would preclude the government from seeking to initiate charges where there wasn't a final judgment entered in one court from seeking to bring those charges in another court. I'm just responding to your argument in your brief. This all comes from your argument in your brief. It's not final, it's preliminary, it doesn't have any binding effect at all. And I'm trying to figure out how it could stop the scenario I'm worried about, but not stop this case. And that's the legal answer I was hoping you would offer. I'm not sure that there's a scenario, there's law that would clearly dictate that the scenario that you have posed is one that is precluded by a legal principle. Again, understanding that a preliminary hearing ruling, it is not that there was... It's not preliminary, it was the end of that case. Let me ask you, Ms. Bates, about the evidence in this case. If we were to find that there's not collateral estoppel and proceed to consider the ruling on the basis that the district court made it, I'm still having a little trouble understanding how what the district court held is squared with the evidence that we have. And let me just ask one question to start. If we find that it's not credible that Officer Heskel could have both facilitated the arrest of Hartsfield and had his eyes on the other suspect enough to say that that was Burroughs when he's arrested, if we find that he just couldn't have done both those things at the same time, then can we still sustain the probable cause for the arrest of Burroughs? And if so, on what basis? So assuming, and I know this is not your position, but if we assume that Heskel's testimony is not the basis and the continuous watching of Burroughs through the trees is unavailable as factual support, can we nonetheless affirm? I may have misunderstood your question. I think as to the first way that I understood the question, this Court does not need to find that Officer Heskel assisted in both the arrest of Hartsfield or the individual that Officer 750 is stopping and the arrest of Burroughs. What the district court judge found and what the evidence support, and there's no clear error in finding, is that Hartsfield testified that he had his eyes on and never lost sight. Heskel, I apologize. Thank you. But Heskel testified that he had his eyes on and never lost sight of the individual who came through that wood line and came out looking at Government's Exhibit 1, came out to where the X is on the map. And then you couple that and marry that testimony with Sergeant Wade's testimony that this person who was stopped in this parking lot, the only person stopped in this parking lot, was appellant. And so what Judge Boasberg recognized was that it's possible that Officer 750 was in front of or around 3425 and thought that the helicopter was assisting him or intending to assist him and speaking to him when he stopped a different individual. Okay. My question is still pending. I understand all that. But my question is, assuming that we think for whatever reason Heskel wasn't watching Burroughs, either because he was watching Hartsfield or we just don't know. But, you know, I think the evidence pretty strongly shows that he was watching Hartsfield and there was a dialogue between them and that person was arrested. But for whatever reason, if you take out the Heskel testimony, then my question to you is, can you still support the probable cause finding in the district court? And if so, on what ground? I mean, without Officer Heskel's testimony? You can have Heskel saying four people bailed out and they started running, but he loses sight. Just imagine that that's what we think the testimony shows. But he loses sight of one of these two. And the one he loses sight of is the one that runs south. I think that that would just be a completely different scenario, and I'm not sure. Because that's not the evidence. Okay. So you don't think there's a basis without that? I mean, I think that you still would have the evidence that at the time of the bailout, you have Officer Heskel testifying that there are only four people. He sees four people bail out of the car. He provides clothing descriptions that he does not see anyone else in the area. And he talks about his ability to see the area and observe from his distance. That when officers come into that lower parking lot, you have Sergeant Wade's testimony through his conversations with Sergeant Bowman that appellant was the only person in that parking lot. Bowman, so Wade heard from Bowman, who heard from, who's the arresting officer? Whether it was Oliveri or Williams. So it's Williams down in the south parking lot, right? Yes, I don't think that it's Sergeant Bowman. What? Right, so you have this sort of double hearsay. But there was testimony that there were actually people out by that time. But again, that was after. By the time of the arrest. By the time of Burroughs' arrest, there was testimony that there were people out all around, right? There were four people in that parking lot. So the officers testified that after they arrived on the scene and observed Burroughs and brought the police presence to that location, people began coming out of their buildings. I don't know that there was a specific moment where they said that that was before or after the moment of the arrest. But the evidence, I think you could rely on the evidence that there was no one other than the four people coming out of that stolen car, that this is in the direction that Haskell saw the individuals running, that the person stopped in that lower parking lot is the only person, matches the clothing description. The clothing description, you have to admit, is pretty generic. Even when there's only these four individuals, two of them have the same clothing. So I don't think that it's the most specific clothing description. But this was never the issue that had to be tackled. I think in my chambers yesterday, three out of five people were wearing that same clothing. That may be the case. But again, there were only four that Haskell saw in the area, and all of them had come from the stolen vehicle. But that's not what the district court had before it in this case, as I think your question recognizes. There was much more. There was the powerful and convincing testimony that the judge was free to credit, and that is the trial court's obligation to make those credibility determinations. One last question. Just a quick question. Hartsfield was prosecuted too? In Superior Court? Well, yes. The preliminary hearing proceedings involved Hartsfield as well. But Hartsfield, was there probable cause for Hartsfield's arrest? Yes. But he wasn't prosecuted. He was prosecuted in Superior Court? Which court? Either. Well, I think that what the record here shows is that a case was initiated against Hartsfield at the same time as Burroughs in Superior Court for the unauthorized use of the vehicle charges, and that a preliminary hearing was held for both individuals, and that probable cause based on the testimony that was presented at that hearing was found as to Hartsfield's arrest. And then the charges were dropped against Hartsfield. There wasn't probable cause for Burroughs. What I'm trying to figure out is can you represent to this court that both at that hearing and going forward, the representations that are made in this case about the source of probable cause for Burroughs were fully consistent with the representations made about probable cause for Hartsfield? Because it would be bad if, like, over in Superior Court, you were saying, well, the helicopter was out over Hartsfield, the officer said he was arresting him right in front of 3625, or whatever the number was, right? We don't want you saying Falcon gave probable cause for Hartsfield there in a different way than for here. So I think just to be clear, the government, I think as Judge Boasberg recognized, I'm not standing here trying to say that there is an explanation that is borne out and established by the evidence as to kind of the discrepancy that Judge Boasberg acknowledged but then went on to find, despite understanding that discrepancy, that there was probable cause for the arrest. And so I'm not aware of a position kind of explaining that possible discrepancy. I think the government presented the evidence. You don't know what happened in the Hartsfield case? I actually standing here today do not know the final result. I know what happened at the time of the probable cause determination, and I'm happy to look that up. And the basis for probable cause for Hartsfield was? Was the stop made in the area of 3425. By Officer 750? Yes. Radioing back. I mean, I don't know that Officer 750 was identified at that hearing either, but there was a stop, and the government's evidence showed that he was, in fact, stopped by the location of 3425 Fifth or Sixth Street. Do you know, Ms. Bates, on which side of Sixth Street the building 3425 is located? Is it west or east? So I think that reading the transcript, looking at a map, the address of 3425 Sixth Street appears, to me at least, to be on the east side of Sixth Street. The photographs that are the defense exhibits that were used at the preliminary hearing and reading the transcript at the preliminary hearing and trying to piece together what were obviously motions pointing onto a map at that hearing, it appears that the building that everyone was talking about was one of the buildings in Government Exhibit 1, 3425, with this awning on it that there are photographs of with the number 3425 that has access up the stairs off Sixth Street, which are shown in the defense exhibits. I believe, standing here, that that building, although it appears to come off Sixth Street, may carry a Fifth Street address. So it may actually be 3425 Fifth Street. We just don't know. That's correct. That's not in the record. Well, there's some ambiguity as to where that actual building is. I think there's some ambiguity, potentially, about whether the physical address is correct, that it is Sixth as opposed to Fifth. I don't believe at the hearing there was, if you read the full transcript and Judge Boothbrook's finding, that there was any ambiguity about what building the witnesses were all pointing to and identifying. In your view, the witnesses, it all is consistent. The witnesses were on the west side of Sixth Street and on the east side of Fifth. That's how I read the transcript, but I think that they're... It's also somewhat murky as to where the bailout occurred, where the car, the stolen car was. Some have them further up on Fifth and some in the parking lot when you get down to the foot of Fifth. I would say that I don't think that the evidence was murky on that point, given Officer Haskell clearly marking on Governance Exhibit 1 the location of the bailout as being in this part of the parking lot, describing it as being between the two buildings. Although there's also the two pairs of buildings. There was testimony that it was a little further up, and I think that makes a difference because part of what you're relying on in terms of what Haskell is describing is running, I think it's running toward Sixth and Mississippi, and if the car stops further up, it's more consistent with the 3425 to be running south to get there, whereas if it stopped over a little bit more to the west, it's a little more confusing to figure out how he could have observed them running towards Sixth and Mississippi. I will say that the evidence that Judge Boasberg had before him and what he credited, which was Officer Haskell's version of the events, and I don't believe that I missed a portion of the transcript, but I think Officer Haskell was clear in all respects about the location of the bailout and did not express any hesitancy about where the bailout occurred, and so that Judge Boasberg's findings would be consistent with that, with viewing the suspects run around the building as Officer Haskell described and down towards Sixth and Mississippi through the wood line. I think Judge Boasberg was faced with one of the defense witnesses, the stepfather of Appellant, but noted that he did not credit the testimony presented by that witness. Unless there are any further questions, we ask that the judgment of the district court be affirmed. Thank you. Thank you. I just wanted to point out that Officer Haskell never testified that he had his eyes on Burroughs and he watched Burroughs run from the car through the woods to the parking lot. He didn't know who he was looking at. He could describe clothing, but that's all. At least five people were stopped that night. Three of them had on black coats and blue jeans. Did you preserve the collateral estoppel argument or not? Yes. I agree that those words were never uttered, but the attorneys argued that the probable cause finding or the finding of no probable cause in superior court should apply later. Where did they argue that? They mentioned that no probable cause was found. Where did they argue finality and preclusive effect? They don't have to use the word collateral estoppel, but they have to make that argument, right? They have to make the argument that this issue has been decided. Well, they made the argument that the issue had been decided and that that holding should continue to apply. Tell me the pages in the brief where they cite that, because I couldn't find anything like that. Okay, it might be in the written motions. Might be? Okay. Well, I'm happy to look for it. Can you send a letter? Right now? Yeah, can you send a letter? Yes. I will send a letter. I also wanted to point out that it would have been very odd for Officer 750 to be in the lower parking lot and yet mistakenly think that he was at 3425. From the lower parking lot, you cannot even see 3425. I don't think the government is arguing that Officer 750 was the officer that arrested Burroughs. Is that what you're understanding them to be saying? I think the court found that Officer 750 was the one who's confused for one of two reasons. Either because he actually was with Falcon in the lower parking lot, but he thought he was at 3425, or because there were two arrests going on at the same time and he thought Falcon was above him, even though Falcon was really above someone else at a different location. Doesn't it kind of have to be the latter? Because there's also all this testimony about there were two people in and two people out, there were only two arrests. And one of the theories that the district judge was throwing around is that, I don't think it's implausible that these people would have been arrested simultaneously and that Hartsfield would say, I've got somebody, and then at the same time a different officer is getting Burroughs, because they're basically running approximately the same distance, the police are arriving. But there is this testimony, we have two in and two out, and so then the question is, well, they really would have had the three, this juvenile and these two. And it's also extremely odd that if Haskell was helping with the arrest of Burroughs there, that none of that scenario that he talks about would have made it into any police report, into the Gerstein, into the field notes of the officers. They give no, you know, there's no description. You said it wouldn't be in the officers' reports, it wouldn't be in the whatstein? The Gerstein is the document that they provide in Superior Court for a probable cause hearing. We only know of two scenarios where there was probable cause, or at least described in the report. One of them was the juvenile, and the other was Cody Hartsfield. And that's what's described in the Gerstein. There's no description at all of the circumstances of the arrest of Mr. Burroughs. In the reports in the Gerstein, when Officer Wade is asked at the trial what were the circumstances, he testifies that, he says, Mr. Burroughs was stopped that evening by officers when the lookouts were given and the helicopter had stated that these individuals were traveling through the wood line from 5th Street toward 6th Street. And he was stopped almost immediately after units arrived on the scene. But no description of, you know, what he was doing when he was stopped, whether Falcon was involved, no description whatsoever. Basically, all of the reports in Wade say that Burroughs was arrested. And nothing more. Thank you. Okay, thank you very much. The case is taken under advisement, but Ms. Rowland, you're going to give us a supplemental? Okay, thank you.
judges: Griffith, Millett, Pillard